## Case No. 4,986.

### FOUR CASES SILK RIBBONS.

[1 Ben. 214; [1] 5 Int. Rev. Rec. 181.]

District Court, S. D. New York. June, 1867.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

S. G. Courtney, Dist. Atty., and Thomas Simons, for the United States.

Sidney Webster, for claimants.

BLATCHFORD, District Judge. This question has heretofore been presented to this court in at least two cases, in which orders for bonding were made in accordance with the views urged by the claimants. One of the cases was that of U. S. v. 1,406 Boxes of Sugar [Case No. 15,959], marked "L. V. H. & Co.," in which, February 25th, 1862, an order was made by this court (Judge Betts), that the property be bonded at its market value, less the duties. But no minutes of any argument of the question before the court and no written opinion are found. The second case referred to was that of U. S. v. 1,382 Hogsheads of Sugar [Id. 15,962], in which, March 22d, 1862, an order was made by Judge Betts, that the goods seized be bonded by the claimant at their appraised value in this market, exclusive of the duties. In an opinion delivered in this court, by Judge Smalley, in that case, in June, 1862, on a motion made by the United States to set aside an order releasing the goods from custody, it is stated that the question decided by Judge Betts, by the order of March 22d, 1862, was argued before him, and that, after full consideration, he held that the bond should be for the value, less the duties. But in that case, as in the other, no minutes of the argument of the question before Judge Betts are found, nor does the subject appear to have been disposed of by him in a written opinion. The motion before Judge Smalley in the case, turned upon other points than the one now presented for consideration. This court is, therefore, now asked to review the subject, and settle the course of practice for this district.

Under the acts on which the libel in this case is founded, the penalty imposed is the forfeiture of the goods. If the goods are not warehoused, but are entered for consumption and the duties on them are paid, and they are, when seized, in the hands of the importer, he loses, if the goods are forfeited, the duties which he has paid, and the goods also. As the duties on the goods have been paid, those duties enter as an element into the value of the goods at the time of their seizure; and the government, in availing itself of the provisions of the ninetieth section of the act of March 2, 1799, in case the goods are condemned and not delivered on bond to a claimant, and selling the goods at auction to the highest bidder, receives the market value of the goods, of which value the duties form a part. The government receives just what the importer loses. If, after the government, under such circumstances, seizes the goods for forfeiture, they are bonded at their market value, then, in case they are condemned, the government receives and the importer loses the same amount as if they were not bonded, that is, the duties which have been paid, and the value of the goods in market, into which value the duties enter as a constituent part.

If the duties on the goods have not been paid, and the goods are, when seized, in warehouse under the warehousing acts, with a bond to secure the duties, the property is in a very different situation from that which it is in when it is not warehoused, but is seized in the hands of the importer, after a consumption entry and after the payment of duties. The interpretation uniformly given to the eighty-ninth section of the act of March 2, 1799, is that the sum at which the property seized is to be appraised is its value as of the time and place of seizure. The theory is, that the government is entitled, on a forfeiture and condemnation, to the value of the property as it stood at the time of the seizure—at the time it thus came into the hands of the government. When the property is not warehoused, but is seized after a consumption entry, and after the duties on it have been paid, and is then condemned, this theory is carried out by causing the importer to lose and the government to receive, either by sale of the property, or by a suit on the bond given to procure its release after arrest, what was its value as it came into the possession of the government at the time of its seizure. It is true that, under such circumstances, the government receives, on the consumption entry, the duties on the property, and that afterward those duties enter into the price or value which the government receives for the property, after it is condemned; and thus, according to a form of speech, the government may be said to receive, and the importer to pay, the amount of the duties twice. But this is a fallacy. The duties are first paid as duties on the consumption entry, and then the property becomes part of the common stock of the country, and enters into its markets, and has a merchantable value, composed of all the elements which go to make up such value, such as cost of manufacture, freight, commissions, duties, mercantile profit, and other items. That value it is, which, when

the property is seized under such a state of facts, passes from the importer to the government; and the importer necessarily loses the duties he has paid, and the money value of the property, which otherwise would have gone into his own pocket—no more and no less. But when the property is in warehouse, under a bond to secure the duties, it is there subject to withdrawal for consumption on payment of duties, or to withdrawal for re-exportation without payment of duties. If seized while so in warehouse, it has, at the time of seizure, a value composed of very different elements, so far as the question now under consideration is concerned, from those which compose its value when it is not in warehouse, but is seized in the hands of its importer, after a consumption entry and after the payment of duties. If sold by the importer while so in warehouse under bond, the duties do not form an element of its price or value. The purchaser pays to the importer the value of the property, not including any duties, and afterward pays the duties on withdrawing the property for consumption, or re-exports it without paying duties. The property cannot, while in warehouse under bond for the duties, be put into market for consumption, so as to have the duties enter as an element into its value; and if it is withdrawn for re-exportation, the duties can never enter into its value in any market in this country under its existing importation. These views show, that when property in warehouse under bond for duties is seized, the duties form no part of its value at the time it is seized. Now, applying the remedies which the law gives to the government to this state of facts, these consequences follow. If the government enforces the forfeiture, and the property is not released on bond, but is sold, the government receives for it, by putting it into market, a price into which the duties enter as a component part (the property, when sold, being put into competition with other property of the same kind which has paid duties), and thus the government receives not only what was the value of the property to the importer at the time of the seizure, but also an additional value representing the amount of duties. Thus, the government virtually receives the duties on the property, and also its value at the time of seizure. It receives what the importer ought to lose, namely, the value of the property to the importer at the time of its seizure; and it also practically receives the duties, by receiving the same price for the property which it would bring if it had paid duties. It also claims the right to enforce against the importer the bond for duties given on the entry for warehouse. If it should be allowed to enforce that bond, then, in such case, as in the case where the property was condemned and sold on being seized while not in warehouse, but while in the hands of the importer, after a consumption entry and after the payment of duties, it would seem to receive the amount of the duties twice. But this again is specious. The bond for duties given by the importer, if enforceable, would be enforced by reason of the voluntary act of the importer in giving it. The transaction of giving such bond, and any rights of the government under it, are separate and distinct from the rights acquired by the government by virtue of any fraud which justifies the seizure of the property. As to what the government receives as representing duties when it sells the property in market, it receives that as an incident of sovereignty. The property has virtually been imported by the government itself, and it has the right to put it into the market, and all it receives for it, as representing duties on like property, is clear gain. But such gain arises from the principle that the government pays no duties on articles imported by itself. If the government imports property which is afterward sold by it, it receives on the sale a price into which the amount of duties on like property, when imported by an individual, enters as a constituent part, and the gain thereby accruing to the government is an inherent incident of its sovereign right. But, although the course of proceeding in the case of a sale on forfeiture where the goods are in warehouse under bond, may bear the semblance of giving to the government the amount of the duties on the property twice, in addition to the value of the property to the importer at the time of its seizure, yet the importer loses nothing but what was the value to him of the property at that time; and, if the bond given by him for the duties is enforced, he loses those also.

At this stage comes up the question now presented for decision. If the property proceeded against in this suit is released on a bond such as the government insists on—namely, a bond for the value of the property when seized, including the duties—and the property is condemned in the suit, the government will receive, under such bond, not only the value of the property to the importer at the time of seizure, but also an additional value, representing the amount of the duties; and, besides that, it will receive the duties imposed by the collector, in case the goods are withdrawn for consumption. It will thus receive, in all, just what it would receive in case the property were condemned and sold, on its seizure while not in warehouse, but while in the hands of the importer, after a consumption entry, and after the payment of duties. And it will not receive that full amount, if a bond for the value less the duties, is given. But it has been already shown that the warehousing system introduces a change, to the full benefits of which the importer is entitled. Where the property is not warehoused, the government receives the duties; and if it afterwards seizes and condemns the property, it receives its full market value. If the property is

warehoused, and then seized, condemned, and sold, without being delivered to the claimant on bond, the government acquires the title to the property, and sells it in like manner as if it had itself imported it. But in case such a bond as the government claims to receive in the present case is given, the importer will, as we have seen, lose, if the property is condemned in the suit, not only what was the value to him of the property, in warehouse, at the time of its seizure, but, in addition, a sum equal to the amount of the duties legally chargeable thereon; and if, after thus bonding the property, he withdraws it for consumption, he must pay the duties on it in cash to the collector, notwithstanding the amount of them has been included in such delivery bond. He will thus, in case of a condemnation, lose more than he would if the property were not delivered to him on bond, but were to remain in the hands of the government, and be sold by it. In each case, the same offence is charged and has been committed, for which the property is forfeited. In each case the property is in warehouse, under bond for the duties. The merchandise is equally guilty in each case; but, if the claimant seeks to avail himself of the privilege of bonding his property when it is seized while in warehouse, he cannot do so, according to the views urged by the government, without imposing upon himself a liability, in case the property is condemned, which he will not incur if he leaves the property in the hands of the government. Such a result is opposed to the spirit and intent of the eighty-ninth section of the act of March 2, 1799. One of the principal points involved in the case before referred to, decided by Judge Smalley, was, whether the bonding system, provided for cases of seizure by the eighty-ninth section of that act, applied to property seized while in warehouse. He decided that it did so apply, and that it was the intention of congress that the merchant should have the full benefits and advantages of the warehousing system. To require from him such a bond as the government claims, would be to deprive him practically of the benefit of bonding warehoused property seized and prosecuted while in warehouse. But if the property is delivered to the claimant on a bond for its value when seized, not including the duties, then, if the property is condemned in the suit, the importer will lose the same amount as if he had not bonded the property, and no more; and will thus have the full benefit of the privileges of the warehouse system, and the full benefit of the system of bonding provided by the eighty-ninth section of the act of 1799.

It is claimed by the government that this view is contrary to the decision of Judge Cadwalader, in the district court of Philadelphia, in the case of U. S. v. Segars [Case No. 16.249]. It does not appear, in the report of that case, that the property seized was in warehouse. The question before the court for decision, as stated in the opinion, was whether the amount of regular duties payable on the property, if legally entered, was to be deducted by the appraisers in ascertaining the value for which the delivery bond should be given; or, in other words, whether, in case of condemnation, the claimant should lose the amount of those duties, as well as the value of the property forfeited. The court does not, in its opinion, allude to the warehousing acts, or discuss the question in reference to property seized while in warehouse. It lays down the principle, that if the property is to be delivered to the claimant, on substituting for it a bond, under the eighty-ninth section of the act of 1799, that bond should be a substitute for the full value of the property. Such full value the court, in that case, held to be the market value, without a deduction of the amount of the duties. Where property is seized in the hands of the importer, after a consumption entry, and after the duties are paid, the full value of the property to the importer, at the time of the seizure, necessarily includes the duties, as we have seen. But where property in warehouse under bond for duties is seized, the full value of the property to the importer at the time of seizure does not include the duties. The delivery bond is intended to be a substitute for the full value of the property to the importer at the time of seizure, and for nothing more.

Uniformity of principle and equal justice to the importer in all cases of seizure can be carried out only by varying the basis of appraisement in the manner indicated, in cases of delivery bonds on seizures of property in warehouse. It is said by Judge Cadwalader, in his opinion, that the circumstance that the duties have not been paid when the proceeding to forfeit the property is instituted, is, in reason, attended with no difference in favor of the importer. That is very true. But it is equally true that the circumstance that he has availed himself of the provisions of the warehousing acts, and given a bond for the duties, instead of paying them, ought not to work a difference against him. Such a difference is manifestly worked if he is compelled, as a condition of obtaining a release of his property from seizure, to give such a bond as the government claims in this case.

While I regret to seem to differ from so experienced and able a jurist as Judge Cadwalader, I am satisfied, after thorough reflection, that the principle laid down by Judge Betts, and always adhered to by him, in regard to the amount of the bond to be required in cases of seizures and prosecutions for forfeiture of property in warehouse under bond for duties, was correct. Such will continue to be the ruling of this court in like cases, until varied by superior authority.

The prayer of the petition is granted.